| | |
|---|---|
| In re: **CHASEN'S BUSINESS INTERIORS, INC.,** ) ) ) ) | **Case No.: 09-36686-KRH** **(Chapter 7)** |
| Debtor. ) | |
| ) | |
| **TOWNEBANK,** ) ) | |
| Plaintiff, ) ) | |
| v. ) | **Adversary No. 10-03043-KRH** |
| **CHASEN'S BUSINESS INTERIORS, INC.** ) ) ) ) | |
| and ) | |
| **MANUFACTURERS AND TRADERS TRUST COMPANY,** ) ) ) ) | |
| Defendants. ) | |

## RESPONSES OF DEFENDANT MANUFACTURERS AND TRADERS TRUST COMPANY TO TOWNEBANK'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant, Manufacturers and Traders Trust Company ("M&T"), by and through undersigned counsel and pursuant to Rules 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure and Official Forms hereby submits these objections and responses to the First Set of Interrogatories, Requests for Admission and Requests for Production of Documents (the "Combined Discovery") propounded by Plaintiff, TowneBank.

## GENERAL RESPONSES/OBJECTIONS

A.     M&T objects to the Instructions and Definitions incorporated in the Combined Discovery to the extent that they are inconsistent with, or purport to impose a duty beyond that imposed by, the Federal Rules of Bankruptcy Procedure and disavows any obligation to comply with such Instructions and Definitions.

B.     M&T's responses to the Combined Discovery are made solely for the purpose of this action. Each response is subject to all appropriate objections (including, but not limited to, objections as to confidentiality, relevancy, propriety and admissibility) which require the exclusion of any statement contained herein. All such objections and grounds are reserved and may be interposed at the time of trial.

C.     The knowledge of M&T includes only such knowledge as it has obtained in accordance with the discovery rules contained in the applicable Rules of this Court. M&T's responses to the Combined Discovery reflect the knowledge of M&T as of the date of the responses.

D.     The information furnished in M&T's Answers to Interrogatories is not based solely upon the knowledge of the executing party, but includes the knowledge of the parties' agents, representatives and, except to the extent the same is privileged, its attorneys. The word usage and structure of these Answers is that of the attorney for the executing party and is not be that of the executing party.

E.     M&T objects to any Interrogatory which purports to request information in the possession, custody or control of anyone other than M&T.

F. M&T objects to any Interrogatory to the extent that it seeks disclosure of information protected from discovery by the attorney/client privilege or the attorney work-product doctrine.

G. M&T objects to any Interrogatory to the extent that it seeks information not relevant to the issues before the Court in this case and not reasonably calculated to lead to the discovery of admissible evidence.

H. Except for explicit facts admitted by M&T, no admissions of any nature whatsoever are implied or should be inferred. The fact that M&T responds to any Request for Admission should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such Request.

I. M&T responds to the Requests for Admission with such knowledge as it possesses.

J. M&T responds to the Requests for Admission without waiver and with preservation of:

a. The right to object to the use of any responses, or the subject matter thereof, on any ground in any proceedings in any action (including any trials);

b. The right to object on any ground at any time to a demand or request for a further response to this discovery request or to any other interrogatories, document requests, or other discovery proceedings involving or relating to the subject matter of the discovery requests herein responded to; and,

c. The right at any time to revise, correct, add to, supplement or clarify any of the individual Requests.

K.     In response to the Request for Production of Documents (the "Document Requests"), M&T will produce existing documents in its possession or under its control, obtained through a reasonably diligent search of its records, and in accordance with the manner in which those records are retained.

L.     M&T will produce its relevant and responsive documents at a time and location mutually convenient to counsel.

M.     M&T objects to the Document Requests to the extent that they seek to require it to disclose privileged attorney-client communications or information otherwise protected from discovery on the grounds of privilege.

N.     M&T objects to the Document Requests to the extent that they seek the production of attorney work-product or documents or other tangible things prepared or obtained in anticipation of litigation or for trial.

O.     M&T will not produce copies of pleadings or any documents exchanged between counsel in any litigation because those documents are equally available to TowneBank.

P.     M&T further responds as follows to the individual Document Requests without waiver and with preservation of:

1)     The right to object to the use of any response, or the subject matter thereof, on any grounds in any proceeding or action (including any trial);

2)     The right to object on any grounds at any time to a demand or request for a further response to any of the Document Requests or to any other document request, interrogatory or other discovery mechanism involving or relating to the subject matter of the Requests;

3)     The right at any time to revise, correct, add to, supplement or clarify any of the individual responses.

Q.     Each of the objections and limitations set forth above is applicable to each of the Interrogatories, Requests for Admission and Document Requests set out below, and these objections and limitations are hereby incorporated by reference in each response.

R.     M&T reserves the right to amend or supplement any of its responses if it secures new or different information during its investigation of this matter.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**     State the full name, birth date, social security number, address, education, current employer and/or occupation of the person(s) answering these Interrogatories.

**RESPONSE:**     M&T objects and refuses to provide the birth date, social security number and personal address of the individual answering TowneBank's Interrogatories as that portion of the Interrogatory is harassing and potentially harmful to the individual signing the Interrogatories. M&T further objects to providing the education of the individual answering the Interrogatories as that information is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. Without waiving those objections, M&T states that these Interrogatories are being attested to by Michael McShane, Vice President, Manufacturers and Traders Trust Company, 25 S. Charles Street, Baltimore, Maryland 21202.

**INTERROGATORY NO. 2:**     If the person(s) answering these Interrogatories have been convicted of a felony or other crime involving moral turpitude, state (a) the nature of the crime and/or felony; and (b) the date and place of each conviction.

**RESPONSE:**     M&T objects to this Interrogatory on the grounds that the information is irrelevant and not reasonably calculated to lead to the discovery of admissible

evidence. Without waiving this objection, M&T states that Mr. McShane has never been convicted of a felony or other crime involving moral turpitude.

**INTERROGATORY NO. 3:** State in detail all facts and circumstances upon which you rely for why you dispute or deny any part or all of the allegations of TowneBank's Complaint and produce all documents which you claim support your response to this Interrogatory.

**RESPONSE:** M&T objects to Interrogatory No. 3 on the grounds that it is unduly burdensome and, as it necessarily contains subparts, exceeds the number of interrogatories allowed by Fed.R.Civ.P. 33(1) (as incorporated by Rule 7033 of the Fed. Rules of Bankruptcy Procedure). Specifically, as TowneBank's Complaint consists of 20 paragraphs of allegations, almost of all of which are denied by M&T, Interrogatory No. 3 contains at least 20 interrogatories. With the other 17 interrogatories contained in the Combined Discovery, TowneBank has greatly exceeded its limit of 25 interrogatories. Accordingly, M&T does not intend to provide a response to this Interrogatory without further discussion with TowneBank. Without waiving these objections, M&T states that it has not yet answered TowneBank's complaint and, therefore, has not yet taken a position on the allegations contained in the Complaint. M&T will supplement the answer to this Interrogatory if necessary.

**INTERROGATORY NO. 4:** Identify all persons who you believe have knowledge of any of the matters set forth in your Answer to the Complaint or any facts relative to the subject matter of this litigation regardless of whether you intend to use such person(s) as a witness. Specifically indicate which of such persons was/were the account officer(s) for Chasen's Business Interiors, Inc. ("Chasen's").

**RESPONSE:** The following individuals have knowledge of the facts relative to the subject matter of this litigation:

       1.     Michael McShane
                Vice President

Manufacturers & Traders Trust Company
25 S. Charles Street
Baltimore, Maryland 21202

2.  Sharon Flagler
    Administrative Vice President & Regional Manager of Special Assets
    Manufacturers & Traders Trust Company
    25 S. Charles Street
    Baltimore, Maryland 21202

3.  Robert Newton
    President, Central Virginia Division
    Manufacturers & Traders Trust Company
    8002 Discovery Drive, Suite 200
    Richmond, Virginia, 23229

4.  Hugo S. Giancaterino, Jr.
    Last known address:
    Chasen's Business Interiors, Inc.
    7100 Forest Avenue, Suite 100
    Richmond, Virginia 23226

5.  Leisa Deffenbaugh, Consultant
    Last known address:
    Chasen's Business Interiors, Inc.
    7100 Forest Avenue, Suite 100
    Richmond, Virginia 23226

6.  Wendy Hill, former Chief Financial Officer
    Last known address:
    Chasen's Business Interiors, Inc.
    7100 Forest Avenue, Suite 100
    Richmond, Virginia 23226

7.  Paul Iles
    Vice President Dealer Distribution
    Herman Miller, Inc.
    855 East Main Avenue
    Zeeland, Michigan 49464

8.  Mark Van Staveren
    Dealer Business Consultant
    Herman Miller, Inc.
    855 East Main Avenue
    Zeeland, Michigan 49464

Mr. McShane is M&T's account manager for Chasen's.

**INTERROGATORY NO. 5:**      Identify all communications by and among any officer, director or employee of M&T Bank and anyone affiliated with Chasen's between January 22, 2009 and August 1, 2009.

**RESPONSE:**      M&T further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome because it is literally impossible for M&T to identify "all communications" by and between any employee of M&T and Chasen's for a 6 month period. M&T further objects to this Interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, and pursuant to Federal Rule of Civil Procedure 33(d), as incorporated by Bankruptcy Rule 7033, M&T refers TowneBank to the documents that it is producing in response to TowneBank's Request for Production of Documents.

**INTERROGATORY NO. 6:**      When and how did M&T Bank first learn that Chasen's was ceasing business operations?

**RESPONSE:**      M&T learned that Chasen's was ceasing business on or about July 15, 2009 during a telephone conversation with Chasen's President, Hugo S. Giancaterino, Jr.

**INTERROGATORY NO. 7:**      What if any changes were made by M&T Bank in the relationship with Chasen's once it learned that Chasen's was ceasing business operations?

**RESPONSE:**      M&T objects to this Interrogatory on the grounds that it is vague and, therefore, overly broad because TowneBank has not identified the nature of the "changes" in which it is interested. Without waiving this objection, M&T states that no changes were made to the relationship with Chasen's once M&T learned that Chasen's was ceasing business. That being said, actions taken by M&T prior to its learning that Chasen's was ceasing business

8

operations may have contributed to the closure of Chasen's. Those actions included putting a "restraint" on Chasen's account, ceasing funding of Chasen's disbursement requests after June 19, 2009, returning payroll and other disbursement checks which were drawn on insufficient funds, and "setting off" Chasen's accounts against its debts to M&T.

**INTERROGATORY NO. 8:** Identify all communications by and among any officer, director or employee of M&T Bank with third party customers of Chasen's after M&T Bank learned of Chasen's closure.

**RESPONSE:** M&T objects to this Interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. Without waiving this objection, M&T states that it does not believe that it had any communications with third party customers of Chasen's after M&T learned of Chasen's closure. To the extent that any such communications occurred, M&T refers TowneBank to the documents that it is producing in response to TowneBank's Request for Production of Documents, pursuant to Federal Rule of Civil Procedure 33(d), as incorporated by Bankruptcy Rule 7033.

**INTERROGATORY NO. 9:** Did M&T Bank take part in the closure of Chasen's and if so, identify all communications related thereto and what actions it took?

**RESPONSE:** M&T further objects to this Interrogatory on the grounds that it is vague and, therefore, overly broad because the phrase "take part" is undefined, leaving M&T at a loss as to what information TowneBank is seeking. M&T further objects to this Interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. Without waiving those objections, M&T states that it did not "take part" in the closure of Chasen's. To M&T's understanding, the decision to cease operations was made by Mr. Giancaterino. M&T did consent to the sale of certain of Chasen's

assets to Herman Miller, Inc. for an amount less than the outstanding balance of obligations owed by Chasen's to M&T, once Mr. Giancaterino made the decision to cease operations and sell certain of Chasen's assets to Herman Miller, Inc.

**INTERROGATORY NO. 10:** When and how did M&T Bank first hear that TowneBank would be making and/or had made each deposit for furniture in Chasen's account and identify all communications with respect to TowneBank's deposit?

**RESPONSE:** M&T was told that TowneBank had made a deposit to Chasen's for furniture on or about July 6, 2009 during a telephone conversation with Chasen's President, Hugo S. Giancaterino, Jr.

**INTERROGATORY NO. 11:** Identify all deposits made by third party customers of Chasen's after June 1, 2009 which were either (a) set off by M&T Bank or (b) allowed to remain in the Chasen's account under Chasen's control or returned to the customer by M&T Bank.

**RESPONSE:** M&T objects to this interrogatory on the grounds that it is seeks information that is irrelevant and not reasonably calculated to lead to discovery of admissible evidence. M&T further objects to this interrogatory on the ground that it assumes facts that have not been established; specifically, that any of the funds in Chasen's accounts were "deposits" made by third party customers. Without waiving these objections, M&T states it exercised its right of set-off on all of Chasen's accounts, except its "Payroll" account, against Chasen's debt to M&T. M&T was aware that funds set-off by M&T included proceeds of a deposit made by TowneBank to Chasen's in connection with a contract executed between TowneBank and Chasen's. However, based on Chasen's use of the account into which these funds were deposited, M&T determined that this fact was not relevant to a determination of whether the account was subject to the Bank's right of set-off. Funds set-off by M&T may or may not have

included other "customer deposits" made by third party customers of Chasen's other than TowneBank. M&T was not specifically aware at the time that any of the funds were deposits and has not investigated whether any of the funds were "deposits" after the fact.

**INTERROGATORY NO. 12:** Identify all accounts Chasen's held at M&T Bank, specifically indicating the title, account number and purpose of such account(s).

**RESPONSE:** Chasen's had four accounts with M&T Bank: (1) Account Number: 0006149057, entitled "Chasen's Business Interiors Operating Account"; (2) Account Number 0006073700, entitled "Chasen's Business Interiors Accounts Payable"; (3) Account Number 0006073719, entitled "Chasen's Business Interiors Payroll"; and (4) Account Number 0006326765, entitled "ProvBank Collateral, F/B/O Chasen's Business Interiors, Inc." M&T does not know the purposes of Account Numbers 0006149057 and 0006073700, although both seemed to be treated by Chasen's as general operating accounts. M&T believes that Account Number 0006073719 was Chasen's Payroll Account. Account Number 006326765 was a "Collateral Account", which represents a depository account over which, by agreement, M&T had sole right of withdrawal. The Collateral Account was linked to a "lockbox", which is a post office box to which Chasen's instructed those of its customers who paid by check to mail remittances on open accounts-receivable invoices. The purpose of the lockbox and the linked Collateral Account were to ensure that proceeds of most (but not all) accounts-receivable, which constituted the majority of collateral securing Chasen's obligations to M&T, were applied to reduce the loan balance.

**INTERROGATORY NO. 13:** Were the TowneBank funds which are the subject of this litigation transferred or deposited directly into the Chasen's account which was subject to the lockbox agreement and, if not, how and when were such funds transferred or deposited into the account with the lockbox provisions?

11

**RESPONSE:**     No, the funds were not deposited into the account that was linked to the lockbox, and they were never transferred to that account.

**INTERROGATORY NO. 14:**     In everyday business practice, what was the practice, procedure and usage of Chasen's account at M&T Bank which was subject to the lockbox provisions (for example: could Chasen's withdraw funds or did M&T Bank have complete control of the funds)?

**RESPONSE:** M&T objects to this Interrogatory on the grounds that it is vague and, therefore, overly broad because the terms "every day business practice" and "the practice, procedure and usage of Chasen's account" are undefined, leaving M&T at a loss as to what information TowneBank is seeking.  M&T further objects to this interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, M&T states that M&T had the sole right of withdrawal over the Collateral Account.  By agreement with M&T, Chasen's was to instruct those of its customers who paid by check to mail remittances on open accounts-receivable invoices to the lockbox.  For those customers from whom Chasen's received accounts-receivable collections directly (i.e. not through the lockbox), Chasen's was required, by agreement with M&T, to deposit such collections to the Collateral Account.  As funds were deposited to this account, M&T would make daily, or near daily, transfers from such account to pay down the loan balance.

**INTERROGATORY NO. 15:**     Identify all amendments and modifications, oral or written, with respect to Chasen's Lockbox Agreement, as well as any standard or customary practices and procedures in connection with same which are not expressly stated in the Agreement.  Identify all changes to the foregoing after M&T Bank learned that Chasen's was ceasing business operations.

**RESPONSE:** M&T objects to this Interrogatory on the grounds that it is vague and, therefore, overly broad because the term "standard or customary practices and procedures" is undefined, leaving M&T at a loss as to what information TowneBank is seeking. M&T further objects to this interrogatory on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, M&T states that the only "modification" to the lockbox agreement of which it is aware is that, after Chasen's closed on the sale of substantially all of its assets to Herman Miller, Inc., by agreement with Chasen's and Herman Miller, Inc., M&T wired accounts-receivable proceeds collected through the Collateral Account to Herman Miller, Inc.

**INTERROGATORY NO. 16:** Who made the decision to and when were the TowneBank funds set off by M&T Bank?

**RESPONSE:** Mr. McShane and Ms. Flagler made the decision to set off Chasen's accounts against its debts; the accounts were set-off on July 14, 2009.

**INTERROGATORY NO. 17:** Describe the funds, other than the TowneBank earnest money deposits, existing in the Chasen's account from June 1, 2009 to the time of the TowneBank funds set off, including their purpose.

**RESPONSE:** M&T objects to this Interrogatory on the grounds that it could not possibly know the "purpose" of all deposits made with it. M&T further objects to this interrogatory on the grounds that seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, and pursuant to Federal Rule of Civil Procedure 33(d), as incorporated by Bankruptcy Rule 7033, M&T refers TowneBank to the documents that it is producing in response to TowneBank's Request for Production of Documents.

**INTERROGATORY NO. 18:** For any Request for Admission stated below to which you do not give as your response an unqualified admission, explain your response in detail?

**RESPONSE:** M&T provides the following explanations for its denials of TowneBank's Request for Admissions:

**Request No. 1:** Denied because Chasen's did not request M&T to pay funds to TowneBank. On July 8, 2010, Chasen's requested through counsel that it be permitted to send the proceeds in question to the vendor on the order. On or about July 13, 2010, Chasen's requested the Bank to permit TowneBank to "reverse their wire deposit for an order we cannot fulfill". However, the account was not set-off until July 14, 2009, and no restriction had been placed on the account which would have prevented Chasen's from withdrawing the funds prior to July 14, 2009. In other words, Chasen's could have written a check on the account prior to July 14, 2010 and returned the deposited funds to TowneBank.

**Request No. 2:** Denied because, while, as referenced above, M&T's actions may have contributed to Chasen's closure and, with Chasen's consent, M&T negotiated with Herman Miller, Inc. regarding the sale of most of Chasen's assets to Herman Miller, the decision to close was made by Chasen's.

**Request No. 3:** Denied because, while M&T was aware at the time of the set-off that funds wired by TowneBank into Chasen's account represented a deposit on a furniture order, such funds, once deposited into a general

14

purpose account, as was the case here, do not retain a "special nature" different than any other funds deposited into the account. Denied also because M&T was not aware until after the funds were deposited that they were the down payment on a furniture order.

**Request No. 4:** Denied because M&T required, pursuant to the Loan Documents, that all accounts-receivable remittances (although not necessarily all funds received by Chasen's) be deposited into the Collateral Account, except for credit card payments to Chasen's which M&T agreed could be deposited into Chasen's Operating Account (although, pursuant to the Loan Documents, the Bank retained the right to, in its discretion, sweep amounts equal to credit card payments received into Chasen's Operating Account into the Collateral Account).

**Request No. 5:** Denied for the same reasons as Request No. 4.

**Request No. 6:** Denied in part to the extent that the term "track" was meant to imply some sort of accounting function on the part of M&T. M&T solely "tracks" the date and amounts of deposits and withdrawals.

**Request No. 7:** Denied because M&T has no knowledge or information relating to such a conversation.

**Request No. 8:** Denied because Chasen's did not close until on or about July 21, 2010, when the sale of substantially all of its assets to Herman Miller, Inc. closed.

**Request No. 9:** Denied because M&T has no knowledge or information relating to such a conversation.

15

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Once Chasen's knew that it would not be able to fulfill the furniture purchase order, Chasen's requested that M&T Bank pay TowneBank back the funds that were deposited with Chasen's for the construction of the furniture.

**RESPONSE:**   M&T objects to this Request on the grounds that it is impossible for it to know, and therefore admit or deny, what information was in Chasen's possession or what Chasen's otherwise "knew". Without waiving this objection, the Request is denied.

**REQUEST NO. 2:**   M&T Bank took part in arranging for the closure of Chasen's.

**RESPONSE:**   Denied.

**REQUEST NO. 3:**   M&T Bank was aware of the special nature of the funds that TowneBank deposited, in that they were to be used by the furniture builder to start work on furniture for TowneBank.

**RESPONSE:**   Denied.

**REQUEST NO. 4:**   M&T Bank requested that all funds entering Chasen's go into a lockbox account.

**RESPONSE:**   Denied.

**REQUEST NO. 5:**   M&T Bank required that all funds entering Chasen's go into a lockbox account.

**RESPONSE:**   Denied.

**REQUEST NO. 6:**   M&T Bank is able to keep track of funds being placed in an account, either electronically or by another method.

**RESPONSE:**   Admitted in part and denied in part. M&T is able to track the date and amount of deposits and withdrawals. It does not "track" funds in any other manner and expressly denies "tracking" funds using any sort of accounting methodology.

**REQUEST NO. 7:**　　Approximately one week after funds were transferred to M&T Bank from TowneBank, M&T Bank called TowneBank and asked what the funds transfer was for.

**RESPONSE:**　　　　Denied.

**REQUEST NO. 8:**　　M&T Bank knew of Chasen's closure when the Bank accepted TowneBank's funds transfer on July 3.

**RESPONSE:**　　　　Denied.

**REQUEST NO. 9:**　　Prior to the set off of TowneBank's funds, M&T Bank contacted TowneBank to ask for the purpose of the funds.

**RESPONSE:**　　　　Denied.

## RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1:**　　All documents which in any way support or relate to any of your Responses to the foregoing Interrogatories or Requests for Admission or which were utilized by you in preparing such Responses.

**RESPONSE:**　　　　M&T objects to this Request to the extent that it seeks documents that are protected by the attorney client privilege, the attorney work product doctrine, or are confidential or proprietary. Without waiving this objection, M&T will produce documents responsive to this Request.

**REQUEST NO. 2:**　　All documents which you contend support your dispute with or denial of the allegations of TowneBank's Complaint.

**RESPONSE:**　　　　M&T objects to this Request to the extent that it seeks attorney opinion work product. Without waiving this objection, M&T states that it has not yet answered TowneBank's complaint and, therefore, has not yet taken a position on the allegations contained in the Complaint. M&T will supplement the response to this Request if necessary.

**REQUEST NO. 3:**   Any and all records which refer or relate in any way to the funds deposited by TowneBank to Chasen's in this matter.

**RESPONSE:**   M&T objects to the Request on the grounds that it is overly burdensome and seeks documents that are irrelevant and not reasonably calculated to lead to this discovery of admissible evidence. Specifically, gathering and producing all records relating the four accounts that Chasen's had with M&T would be very labor intensive and would take months because each check and deposit relating to those accounts would have to be individually retrieved and a copy produced. Without waiving this objection, M&T will produce monthly statements for all four accounts from January 2009 through August 2009 and will produce copies of all checks and deposits on Account Number 0006073700 for that same time period.

**REQUEST NO. 4:**   The signature card, account opening agreement and all other records in regard to all of Chasen's bank accounts maintained at M&T Bank.

**RESPONSE:**   M&T objects to the Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to this discovery of admissible evidence. Without waiving this objection, M&T will produce documents responsive to this Request.

**REQUEST NO. 5:**   All records with respect to all items deposited or otherwise transferred to and withdrawn or removed from the foregoing accounts between January 22, 2009 and August 1, 2009, including, without limitation, account ledgers and/or statements for the relevant period.

**RESPONSE:**   M&T objects to the Request on the grounds that it is overly burdensome and seeks documents that are irrelevant and not reasonably calculated to lead to this discovery of admissible evidence. Specifically, gathering and producing all records relating the four accounts that Chasen's had with M&T would be very labor intensive and would take

months because each check and deposit relating to those accounts would have to be individually retrieved and a copy produced. Without waiving this objection, M&T will produce monthly statements for all four accounts from January 2009 through August 2009 and will produce copies of all checks and deposits on Account Number 0006073700 for that same time period.

**REQUEST NO. 6:**   All Loan Agreements between M&T Bank and Chasen's and any later supplements or amendments thereto.

**RESPONSE:**   M&T objects to the Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to this discovery of admissible evidence. Without waiving this objection, M&T will produce documents responsive to this Request.

**REQUEST NO. 7:**   All documentation evidencing any modifications and/or practices and procedures relating to the written Lockbox Agreement between M&T Bank and Chasen's.

**RESPONSE:**   M&T objects to the Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to this discovery of admissible evidence. Without waiving this objection, M&T will produce documents responsive to this Request.

**REQUEST NO. 8:**   All documentation evidencing the transfer referred to on page 4 of the Memorandum of Law in Support of M&T Bank's Motion to Dismiss Complaint or, in the alternative, Motion for Summary Judgment filed by M&T Bank on April 7, 2010, which stated "including at least one transfer of funds to another of the Debtor's accounts at M&T Bank".

**RESPONSE:**   M&T will produce documents responsive to this Request.

## VERIFICATION

I, Michael McShane, solemnly affirm that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_Michael McShane_
Michael McShane
Vice President
Manufacturers & Traders Trust Company

MANUFACTURERS AND TRADERS TRUST
COMPANY,
a New York banking corporation

By: /s/ Michael A. Hass
       Counsel

Michael A. Hass, VSB No.74974
Nikolaus F. Schandlbauer (admitted pro hac vice)
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
1401 H Street, N.W., Suite 500
Washington, D.C. 20005
(202) 408-8400
(202) 326-5267 facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on this 22nd day of June, 2010, a copy of Defendant Manufacturers and Traders Trust Company's Responses to TowneBank's First Set Of Interrogatories, Requests For Admission And Requests For Production Of Documents was served via the Court's ECF system, on the following parties:

Richard E. Biemiller, Esquire
WOLCOTT RIVERS GATES
301 Bendix Road, Suite 500
Virginia Beach, Virginia 23452

/s/ Michael A. Hass
Michael A. Hass

2231075.2